Filed 1/9/25  P. v. Craig CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082475 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD225297) |
| DONTAYE COLEMAN CRAIG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Mary Woodward Wells, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Assistant Attorney General, Charles C. Ragland, James M. Toohey and Randall D. Einhorn, for Plaintiff and Respondent.

Defendant Dontaye Coleman Craig submitted a petition under Penal Code section 1172.6[1] challenging his conviction for attempted murder. The People filed the trial transcripts trial during the prima facie stage of the proceedings, and both parties relied on the transcripts during the evidentiary hearing stage. The People did not formally move the transcripts into evidence during the hearing, and the court denied Craig's petition without stating that it had reviewed them.

Craig appeals, claiming that the absence of any indication that the court reviewed the transcripts means it failed to perform the fact-finding function mandated by section 1172.6. But appellate courts presume that trial courts follow the applicable law, and a party's reliance on the silence in the record is not a sufficient basis to rebut that presumption. Accordingly, we affirm the court's order denying Craig's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Craig and two codefendants instigated an altercation with rival gang members in 2009 during which multiple shots were fired. (*People v. Craig* (June 5, 2015, D063070) [nonpub. opn.].)[2] One rival gang member was shot several times and seriously injured. Bullets also struck two bystanders, killing one. The People's principal theory at trial was that Craig was the shooter, but there was evidence that another defendant may have fired the weapon.

---

[1] Undesignated statutory references are to the Penal Code. Legislation in 2022 renumbered section 1170.95 to section 1172.6 without substantive changes. (Stats. 2022, ch. 58, § 10.) For clarity, we will use the current number in this opinion.

[2] Rather than state the entire factual background of the case, we will assume familiarity with this prior opinion.

Each defendant was convicted by a jury of murder (§ 187, subd. (a); count 1), attempted murder (§§ 664, 187, subd. (a); count 2) and assault with a firearm (§ 245, subd. (a)(2); count 3). The jury also found true certain firearms and gang-related allegations. The court sentenced Craig to 11 years eight months, plus 75 years to life. Following a successful appeal of his first degree murder conviction, the People accepted a plea to a count of second degree murder rather than retrying him on the first degree offense. Craig was resentenced to 11 years eight months, plus 65 years to life. This appeal concerns Craig's section 1172.6 petition for resentencing that challenges his attempted murder conviction.

## A. *Statutory Amendments in 2019*

At the time Craig was sentenced, a person who committed a homicide during the perpetration of certain enumerated inherently dangerous felonies was guilty of first degree murder, also referred to as "felony murder," even if the killing was unintentional or accidental. (*People v. Cavitt* (2004) 33 Cal.4th 187, 197; *People v. Ervin* (2021) 72 Cal.App.5th 90, 94.) Additionally, a person who knowingly aided and abetted a nonhomicide crime was guilty of any murder that was the natural and probable consequence of the intended crime, irrespective of the aider and abettor's mens rea. (*People v. Gentile* (2020) 10 Cal.5th 830, 845; *People v. Chiu* (2014) 59 Cal.4th 155, 164–167; *People v. Medina* (2009) 46 Cal.4th 913, 920.)

Senate Bill No. 1437 (Senate Bill 1437), which was effective January 1, 2019, changed the law as to felony murder and murder under an imputed malice theory. (Stats. 2018, ch. 1015, § 4.) The bill limited the applicability of the felony murder doctrine to those who were the actual killer, intended to kill, or were a major participant in the underlying felony and acted with reckless indifference to human life. (*Id.*, § 3; see § 189, subd. (e).) It also

3

eliminated the imputed malice theory of murder.  (Stats. 2018, ch. 1015, § 2; see § 188, subd. (a)(3).)  Accordingly, the natural and probable consequences doctrine of aiding and abetting liability is no longer a valid theory of second degree murder.  (*People v. Reyes* (2023) 14 Cal.5th 981, 990.)  Senate Bill 1437 did not, however, invalidate accomplice liability for murder under direct aiding and abetting principles.  (*Reyes*, at p. 990.)

In addition, Senate Bill 1437 created a process for persons convicted of felony murder or murder under the natural and probable consequences doctrine to petition for resentencing.  (Stats. 2018, ch. 1015, § 4. )  Senate Bill No. 775 (Senate Bill 775), which became effective on January 1, 2022, expanded access to this petition process to include, as relevant here, persons convicted of attempted murder under the natural and probable consequences doctrine.  (Stats. 2021, ch. 551, § 2; see also § 1172.6, subd. (a).)

The petition process under section 1172.6 consists of two steps.  At the first, petitioners attempt to establish a prima facie case that they could not be convicted of murder or attempted murder under current law.  (§ 1172.6, subds. (a)–(c).)  The People must respond in writing, and the court holds a hearing and determines whether a prima facie case was established.  (*Id.*, subd. (c).)  At this stage, the court does not make any findings of fact or credibility determinations.  (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

If the petitioner succeeds in establishing a prima facie case for relief, the court moves to the second step:  it issues an order to show cause and holds an evidentiary hearing to determine whether to vacate the challenged conviction.  (§ 1172.6, subds. (c), (d).)  At this step, the People bear the burden of proof to establish beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under current law.  (*Id.*, subd. (d)(3).)  In contrast to the earlier stage, the court "acts as an independent fact finder

4

and determines whether the People have met their burden" during the evidentiary hearing. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 737.) If the People meet their burden, the challenged conviction is upheld and the petitioner is not resentenced. (§ 1172.6, subds. (a), (d)(3)). If the People do not, the challenged conviction is vacated, and the petitioner is resentenced on any remaining counts. (*Ibid.*)

## B.    *Craig's Petitions for Resentencing*

In 2019, Craig filed a section 1172.6 petition challenging his second degree murder conviction pursuant to the parties' agreement, Craig withdrew his resentencing petition and his murder conviction was set aside. In December 2021, Craig pleaded guilty to voluntary manslaughter on count 1 (§ 192) and stipulated to an upper term sentence of 11 years, thereby reducing his total sentence to 22 years and eight months, plus 25 years to life. At that point, Craig stood convicted of voluntary manslaughter, attempted murder, and assault with a firearm.

After Senate Bill 775 became effective, Craig filed a section 1172.6 petition to challenge his attempted murder conviction. The People initially argued that Craig could not establish a prima facie case based on the information contained in the record, including the trial transcripts they attached as an exhibit.[3] Later, however, the People stipulated to a prima facie case for relief. The court issued a show cause order and scheduled an evidentiary hearing. The People told the trial court they would resubmit trial transcripts at the evidentiary hearing.

The People's written response to the show cause order argued that the trial record established Craig should be convicted of murder because he was

---

[3]    The transcripts were not included in the initial record for appeal. We granted Craig's motion to augment the record.

either the actual shooter or a direct aider and abettor.  The People did not attach the trial transcripts, but nonetheless referenced trial testimony to make their argument.  Craig's reply to the People's response also cited to the jury instructions as reflected in the trial transcripts when arguing that the People could not carry their burden of proof.

The evidentiary hearing was held in 2023.  Both parties relied on the paper record to support their respective positions.  Although the People did not submit the trial transcripts again before the evidentiary hearing, both parties' oral remarks referenced trial testimony.  The court denied Craig's petition, finding no reasonable doubt that he was "the direct perpetrator and[/]or direct aider and abettor."  In making this ruling, the trial judge did not specifically state that he had reviewed the trial transcripts.

## DISCUSSION

This appeal concerns the deference we accord a trial court's ruling where the record is silent as to how its decision was made.  Craig requests that we order a second evidentiary hearing on his resentencing petition because the record does not show that the court performed its mandatory fact finding function in denying his petition.  Although Craig recognizes that we must presume that the trial court knew and followed the law, in his view that presumption has been rebutted based on the fact that (1) the People did not move to admit the trial transcripts into evidence during the evidentiary hearing, and (2) the court did not state that it had reviewed the transcripts

6

that were provided during the prima facie stage. The People respond that the presumption has not been rebutted and that any error was harmless.[4]

" '[A] trial court is presumed to have been aware of and followed the applicable law.' " (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517.) Accordingly, " 'we presume that a judgment or order of the trial court is correct, " '[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' " (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 878.) Trial courts are also presumed to have " ' " distinguish[ed] admissible from inadmissible evidence, relevant from irrelevant facts, and . . . recognize[d] those facts which properly may be considered in the judicial decisionmaking process." ' " (*People v. Presley* (2021) 65 Cal.App.5th 1131, 1142–1143.) In short, absent an affirmative showing otherwise, we must conclude even on a silent record that the trial court properly performed its fact finding functions.

That is the conclusion we reach in this case. The transcripts were provided to the court at the prima facie stage of the proceedings on Craig's resentencing petition, and the parties relied on them in their papers and oral arguments during the evidentiary hearing. Thus, they apparently believed the transcripts were received in evidence and treated them as such. So did the court, given that it did not express confusion or surprise concerning the parties' use of them. (See *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 742 [" 'Where documents are not formally introduced, but it is apparent

---

[4] The People also argue that Craig forfeited his claim by failing to raise it below. We exercise our discretion to consider its merits because Craig does not dispute the People's representation that the transcripts were provided to the court at the prima facie stage of these proceedings. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [discussing discretion to review forfeited issues].)

that the court and the offering party understood that they were in evidence, they must be so considered.' "].) Accordingly, we presume that the court considered their relevant portions before denying Craig's petition.

For his part, Craig argues that "the silent record in this case does not instill confidence that the court's required independent review ever occurred." But he has it backwards, as we presume from a silent record that the court *did* conduct the required review. (*Hurtado*, *supra*, 35 Cal.App.5th at p. 878.) Speculation otherwise does not constitute the affirmative showing necessary to rebut that presumption. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent *evidence* to the contrary, we presume that the trial court knew the law and followed it" (italics added).].) We therefore must affirm the court's order denying Craig's petition.

## DISPOSITION

The order is affirmed.

DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.

8